J-S34002-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JESSE LEWIS | : | |
| | : | |
| Appellant | : | No. 249 WDA 2018 |

Appeal from the PCRA Order Entered January 16, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0013110-2011

BEFORE:   DUBOW, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY DUBOW, J.:                    FILED AUGUST 19, 2019

Appellant, Jesse Lewis, appeals from the January 16, 2018 Order entered in the Allegheny County Court of Common Pleas dismissing his first Petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546, as meritless.  After careful review, we affirm.

On March 17, 2011, Appellant shot Lakisha Robinson and Richard Edge, killing the former and injuring the latter.  Following this incident, the Commonwealth charged Appellant with one count each of First-Degree Murder, Attempted Murder (with the victim suffering from serious bodily injury), Aggravated Assault, Persons Not to Possess a Firearm, and the

_____

[*] Retired Senior Judge assigned to the Superior Court.

summary offense of Carrying a Loaded Weapon, and two counts of Recklessly Endangering Another Person ("REAP").[1]

Nicole Orwick, a Commonwealth witness, testified that, on the night of the murder, she, Ms. Robinson, and another friend, Patrice Hammond went to Peanutz, a local bar. She testified that, later that night, Ms. Robinson got into a fight with Sakisha Morant outside Peanutz. She further testified that she attempted to break up the fight, but Ms. Robinson and Ms. Morant continued to argue. She then testified that she observed Ms. Robinson walk up the stairs, when she heard a gunshot.

Relevant to the instant appeal, at trial, the Commonwealth introduced footage from two surveillance cameras. Ms. Orwick identified Appellant in the footage as wearing a white shirt with stripes, pointed out on the video Appellant's extended hand holding an object, and testified that is where the gunfire came from. She further testified that the individual seen on the video running away and throwing a gun was Appellant.

Appellant's other victim, Richard Edge, testified that he did not remember seeing Appellant in the bar that night. Mr. Edge said he tried to break up a fight outside of the bar between Patrice Hammond and a woman named Lexie. He testified that Ms. Robinson and Ms. Morant entered the melee and while Edge was trying to restore order, he heard two shots. After Edge heard the first shot, he turned and ran but was hit in the arm with the

---

[1] 18 Pa.C.S. §§ 2501; 901(a); 2702(a)(1); 6105(a)(1); 6106.1(a); and 2705, respectively.

second shot as he was running away. Edge testified that he did not see who shot him. Edge said that the person in the video in the white muscle shirt (the same person identified by Orwik) holding the gun shot him. Upon further review of the video, Edge testified that the same person who had shot him had jumped on his back earlier during the fight. At the time, Edge thought that the person on his back was a woman. Edge pushed the person in the white muscle shirt away, as seen on the video. Both Edge and his brother Demitrius Edge identified Appellant from a photo array. Hammond also identified Appellant as the individual in the white muscle shirt.

Police Officer James Smith testified that he interviewed another witness, Derrick Cabel. In the interview, Cabel stated that after he heard the second shot, he looked over a wall he was hiding behind and saw Appellant with a gun pointed at Edge. Sergeant Christina Davison testified that she responded to the dispatch call of shots fired in the area. As she was arriving at the scene, a short male in a white t-shirt and dark pants ran directly in front of her vehicle away from the area where the shots were fired. Sergeant Davison identified Appellant as that individual. She further stated that Appellant and the individual in the video were consistent in stature and clothing. See Trial Ct. Op., 4/7/14, at 3-6.

On February 28, 2013, a jury convicted Appellant of one count each of First-Degree Murder, Attempted Murder, and Aggravated Assault, and two

counts of REAP.[2]  On May 8, 2013, the trial court sentenced Appellant to a term of life imprisonment for the First-Degree Murder conviction with a consecutive aggregate term of 26 to 52 years' incarceration for the remaining convictions.[3]  Appellant filed a timely Post-Sentence Motion, which the trial court denied.

On May 5, 2015, this Court affirmed Appellant's Judgment of Sentence. See Commonwealth v. Lewis, 122 A.3d 440 (Pa. Super. 2015).[4]  On October 23, 2015, the Pennsylvania Supreme Court denied Appellant's Petition for Allowance of Appeal.  See Commonwealth v. Lewis, 126 A.3d 1283 (Pa. 2015).  Appellant did not seek a writ of certiorari from the United States Supreme Court.  His Judgment of Sentence, thus, became final on January 21, 2016.  See 42 Pa.C.S. § 9545(b)(3); U.S. Sup. Ct. R. 13.

_____

[2] The court also convicted Appellant of Persons Not to Possess a Firearm, 18 Pa.C.S. § 6105(a)(1), the bifurcation of which Appellant's counsel requested by oral motion, and the summary offense of Carrying a Loaded Weapon, 18 Pa.C.S. § 6106.1(a).

[3] In particular, Appellant's aggregate sentence consisted of a 20 to 40 year term of incarceration for his Attempted Murder conviction, a 5 to 10 year consecutive term of incarceration for his Persons Not to Possess Firearms conviction, and a 1 to 2 year term of incarceration for his REAP conviction. The court imposed no further penalty on the Aggravated Assault and Carrying a Loaded Weapon convictions.

[4] In his direct appeal, Appellant challenged the sufficiency of the evidence in support of his First-Degree Murder conviction, and an evidentiary ruling, and asserted that he had not knowingly and voluntarily waived his right to a jury trial on the Persons Not to Possess a Firearm charge.

On October 19, 2016, Appellant filed a timely counselled PCRA Petition, and on September 14, 2017, with leave of court, an Amended PCRA Petition.[5] In his Amended Petition, Appellant alleged that he is serving an illegal sentence and that the Commonwealth violated his due process rights by withholding a videotape of the shooting—suppressed by Police Detective Margaret Sherwood—that Appellant claims shows that he was acting in self-defense. Appellant also asserted claims that his trial counsel had been ineffective for failing to: (1) argue at trial that there was more than one videotape of the shooting; (2) obtain the second videotape; (3) request a Kloiber[6] instruction with respect to Nicole Orwik's testimony; (4) object to the trial court's "imperfect self-defense" instruction; and (5) request a "full" voluntary manslaughter jury instruction and a "transferred intent" instruction. Amended Petition, 9/14/17, at I-VII.

On December 1, 2017, the Commonwealth filed an Answer to Appellant's Amended Petition. On December 8, 2017, the PCRA court notified Appellant of its intent to dismiss his Amended Petition without a hearing pursuant to Pa.R.Crim.P. 907. Appellant did not file a Response to the court's Rule 907 Notice. On January 17, 2017, the PCRA court dismissed Appellant's Amended Petition.

_____

[5] Counsel, Thomas N. Farrell, Esquire, also represented Appellant in his direct appeal.
[6] Commonwealth v. Kloiber, 106 A.2d 820 (Pa. 1954).

- 5 -

This appeal followed. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant raises the following three issues on appeal:

I. Whether newly discovered evidence demonstrating that Detective Margaret Sherwood is a corrupt police officer who has a history of deceitfulness in manipulating witnesses and evidence, in light of the fact that there was more than one videotape of the shooting, which showed that Appellant was not the shooter, and was never turned over by the police?

II. Whether counsel gave ineffective assistance for failing to object to the trial court's instruction that if the jury found Appellant had committed first-degree murder that they could not consider voluntary manslaughter?

III. Whether the sentence for criminal attempt homicide of Richard Edge merges with the sentence of first-degree murder when the jury was instructed that Appellant's intent and attempt to kill Richard Edge could be used as an element to convict Appellant of first-degree murder of Lakisha Robinson?

Appellant's Brief at 5.

We review the denial of a PCRA Petition to determine whether the record supports the PCRA court's findings and whether its order is otherwise free of legal error. Commonwealth v. Fears, 86 A.3d 795, 803 (Pa. 2014). This Court grants great deference to the findings of the PCRA court if they are supported by the record. Commonwealth v. Boyd, 923 A.2d 513, 515 (Pa. Super. 2007). We give no such deference, however, to the court's legal conclusions. Commonwealth v. Ford, 44 A.3d 1190, 1194 (Pa. Super. 2012).

To be eligible for relief pursuant to the PCRA, Appellant must establish, inter alia, that his conviction or sentence resulted from one or more of the

enumerated errors or defects found in 42 Pa.C.S. § 9543(a)(2). Relevantly, the PCRA provides relief for a petitioner who demonstrates his conviction or sentence resulted from "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S. § 9543(a)(2)(vi). To establish a claim of newly discovered evidence, a petitioner must prove that: "(1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict." Commonwealth v. Sepulveda, 144 A.3d 1270, 1276 n.14 (Pa. 2016). Newly discovered evidence must be producible and admissible in order to entitle a petitioner to relief. Commonwealth v. Castro, 93 A.3d 818, 825 (Pa. 2014). There is no right to a PCRA hearing; a hearing is unnecessary where the PCRA court can determine from the record that there are no genuine issues of material fact. Commonwealth v. Jones, 942 A.2d 903, 906 (Pa. Super. 2008).

In his first issue, Appellant claims that the trial court erred in dismissing his Amended Petition without an evidentiary hearing because he has "newly discovered evidence that one of the main detectives in his case, Detective Margaret Sherwood, has been identified as a corrupt police officer with a history of deceitfulness in manipulating witnesses." Id. at 17. In particular, Appellant claims that Detective Sherwood's January 26, 2018 indictment for

one count each of False Swearing, Unsworn Falsification to Authorities, Tampering with or Fabricating Physical Evidence, Obstructing the Administration of Law or Other Governmental Function, Hindering Prosecution, and False Imprisonment supports his claim that she pressured and coerced witnesses in his case into providing false incriminating statements against Appellant and suppressed exculpatory evidence. Id. at 18-23.

This Court's review of the record in this matter indicates that Appellant has raised this issue for the first time in his Rule 1925(b) statement. See Rule 1925(b) Statement, 8/23/18, at ¶ III. It is axiomatic that issues not raised before the PCRA court in a PCRA Petition are waived. See Commonwealth v. Reid, 99 A.3d 470, 494 (Pa. 2014) (reiterating that an appellant cannot preserve an issue not raised in a PCRA Petition by raising it for the first time in his Rule 1925(b) Statement; the claim is "indisputably waived").[7] Appellant has, thus, waived this issue on appeal.

In his second issue, Appellant claims that his trial counsel was ineffective for failing to object to the trial court's First-Degree Murder jury instruction.

_____

[7] Moreover, even if Appellant had not waived this claim, it would garner him no relief. We agree with the PCRA Court that this "evidence" fails to satisfy both the third and fourth prongs of the test for newly-discovered evidence as it is clearly an attempt to impeach Detective Sherwood and Appellant has not demonstrated that it would likely compel a different result. Last, we note that Appellant has not cited any authority in support of his claim, in contravention of Pa.R.A.P. 2119.

The law presumes counsel has rendered effective assistance. Commonwealth v. Rivera, 10 A.3d 1276, 1279 (Pa. Super. 2010). "[T]he burden of demonstrating ineffectiveness rests on [A]ppellant." Id. To satisfy this burden, Appellant must plead and prove by a preponderance of the evidence that: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different." Commonwealth v. Fulton, 830 A.2d 567, 572 (Pa. 2003). Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim. Commonwealth v. Jones, 811 A.2d 994, 1002 (Pa. 2002).

In order to successfully raise an ineffective assistance of counsel claim, the petitioner must demonstrate that he suffered "actual prejudice[.]" Commonwealth v. Spotz, 84 A.3d 294, 315 (Pa. 2014). A petitioner shows "actual prejudice" when "counsel's ineffectiveness was of such magnitude that it could have reasonably had an adverse effect on the outcome of the proceedings." Id. (citation and internal quotation marks omitted).

With respect to whether counsel's strategy and tactics had "any reasonable basis," the PCRA court may not conclude that counsel's chosen strategy lacked a reasonable basis "unless it can be concluded that an alternative not chosen offered a potential for success substantially greater

than the course actually pursued." Commonwealth v. Mason, 130 A.3d 601, 618 (Pa. 2015) (citation omitted).

In particular, Appellant claims that counsel ineffectively failed to object to the court's voluntary manslaughter instruction. Appellant's Brief at 24. He avers that counsel's failure prejudiced him because the court's instruction precluded the jury from considering his imperfect self-defense and heat of passion defenses to "mitigate any murder offense found by the jury." Id. at 26. He asserts that his counsel had no reasonable basis or strategic reason for not objecting. Id.

> This court reviews a trial court's jury instructions as follows:
> [W]hen evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. We further note that, it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

Commonwealth v. Antidormi, 84 A.3d 736, 754 (Pa. Super. 2014) (citations omitted) (emphasis added). This Court will deem a jury charge erroneous only where the charge as a whole is inadequate, unclear, or has a tendency to mislead or confuse, rather than clarify a material issue. Commonwealth v. Baker, 963 A.2d 495, 507 (Pa. Super. 2008). A charge is adequate unless it palpably misleads the jury or contains an omission that is tantamount to a fundamental error. Id.

At trial, Appellant asserted that he was not guilty of the crimes charged, but, in the alternative, also requested that the court instruct the jury on the charge of voluntary manslaughter. The court agreed and instructed the jury on the charges of, inter alia, First-Degree Murder, Third-Degree Murder, and Voluntary Manslaughter. Appellant now complains, however, that the court's instruction was an "inaccurate statement of the law." Appellant's Brief at 25. In particular, Appellant complains about the following brief, isolated portion of the jury instructions given by the trial court:

> If you find the defendant guilty of [First-Degree Murder] you do not need to consider a verdict on any of the lesser degrees of homicide that I have defined for you.

N.T., 2/6/13, at 601.

This Court's review of the entirety of the trial court's jury instructions reveals that the court carefully and thoroughly explained to the jury the different degrees of homicide, including first-degree and lesser degrees of homicide, and instructed the jury to carefully evaluate each and every possible verdict in the case. See id. at 591-603. The isolated portion of the instruction about which Appellant complains is an accurate statement of the law, and, when viewed within the context and totality of the court's instructions, was not likely to palpably mislead the jury. The jury instruction was, therefore, appropriate and Appellant's trial counsel would have had no reasonable basis for objecting to it. Counsel was, thus, not ineffective and Appellant is not entitled to relief on this claim.

In his final issue, Appellant complains that he is serving an illegal sentence. Appellant argues that his conviction of Attempted Murder merged with his First-Degree Murder conviction for sentencing purposes because he committed these crimes during only one distinct criminal episode and the court's jury instruction "permitted Appellant's intent to kill Richard Edge [to] be used as an element for conviction [of] [F]irst-[D]egree [M]urder of Lakisha Robinson." Appellant's Brief at 28-29.

"The merger doctrine developed to prevent punishing a defendant more than once for one criminal act." Commonwealth v. Gatling, 807 A.2d 890, 894 (Pa. 2002). "In order for two convictions to merge: (1) the crimes must be greater and lesser-included offenses; and (2) the crimes charged must be based on the same facts." Id. at 899. If either prong is not met, merger is not appropriate. Id.

> A lesser-included offense is defined as follows:
> One crime is a lesser-included offense if, while considering the underlying factual circumstances, the elements constituting the lesser crime as charged are all included within the elements of the greater crime, and the greater offense includes at least one additional element that is not a requisite for committing the lesser crime.

Id. at 899 n.9.

In the instant case, the jury convicted Appellant of separate offenses. Contrary to Appellant's claim, our Supreme Court has held that "the imposition of multiple sentences upon a defendant whose single unlawful act injures multiple victims is legislatively authorized[.]" Commonwealth v. Frisbie, 485 A.2d 1098, 1101 (Pa. 1984). See also Commonwealth v. Glass, 50

A.3d 720, 732 (Pa. Super. 2012) (upholding the trial court's separate sentences for separate victims of defendant's single act of arson); Commonwealth v. Burdge, 562 A.2d 864, 867 (Pa. Super. 1989) ("[w]here there are multiple victims of a defendant's criminal conduct, separate punishments are not barred by the merger doctrine. This is true even where there is only a single criminal transaction.").

In light of the foregoing, Appellant's claim is devoid of merit and he is not entitled to relief. The record supports the PCRA court's findings and its Order is otherwise free of legal error. Moreover, because it was evident from the record that Appellant had not presented any genuine issues of material fact, the court did not err in dismissing Appellant's Amended Petition without a hearing.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/19/2019